IN THE UNITED STATES DISTRICT COURT OF MARYLAND
(Northern Division)

| | |
|---|---|
| CHRISTOPHER MARK HELLIWELL )<br>1400 Irving Street, Unit 111, NW )<br>Washington, D.C. 20010 )<br> )<br>  Plaintiff, )<br>  v. )<br> )<br>MCDONOGH SCHOOL, INCORPORATED )<br>8600 McDonogh Road )<br>Owings Mills, MD 21117 )<br> )<br>Serve: Jennifer L. Curry )<br>100 Light Street, 19th Floor )<br>Baltimore, MD 21202 )<br> )<br>  Defendant. | Civil Action No. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Overview of the Case

1.  Plaintiff Christopher Mark Helliwell ("plaintiff") here sues defendant McDonogh School, Incorporated ("McDonogh" or "school") for substantial monetary damages arising from the serious harms and injuries plaintiff suffered when he was a middle and high school boarding student at McDonogh (1974-1977). During plaintiff's years at McDonogh, Robert E. Creed ("Creed"), deceased, a prominent McDonogh faculty member who lived on campus, repeatedly sexually abused plaintiff. As the school later acknowledged, its administration and board knew that Creed had been abusing McDonogh students prior to plaintiff's enrollment there in the 1970s. Rather than removing Creed and protecting plaintiff (and others), the school covered up this knowledge and allowed and enabled Creed to abuse plaintiff. McDonogh breached its obligation to plaintiff to protect him from harm.

Parties

2. Plaintiff Christopher Mark Helliwell is a resident of Washington, D.C. He lives at 1400 Irving Street, Unit 111, NW, Washington, D.C. 20010.

3. Defendant McDonogh School, Incorporated is a private, coed pre-K-12 school in the State of Maryland (a Maryland "citizen"), located (residing) at 8600 McDonogh Road, Owings Mills, MD 21117.

Jurisdiction and Venue

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this case because there is diversity of citizenship between plaintiff (Washington, D.C.) and defendant (Maryland), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(b)(1) & (2), venue is proper in this Court because defendant resides in this district and because a substantial part of the events and omissions giving rise to this case occurred in this district.

Statement of Facts

Plaintiff's attendance and residence at McDonogh and the abuse he suffered there

5. Plaintiff began attending and boarding at McDonogh as a summer school student between seventh and eighth grade in the Summer of 1974, and he remained as a boarding student for eighth, ninth, and part of tenth grades. As a boarding student, plaintiff was in the care and custody and subject to the authority of the school twenty-four hours of every school day. Plaintiff was entitled to the school's protection and the school had a duty to provide it.

6. Robert Creed was a prominent faculty member at McDonogh. Before plaintiff started at the school, the school knew that Creed had a history of engaging in totally inappropriate

2

and harmful conduct with male students, crossing all lines of decency, propriety, and legality. By way of illustration, he would invite adolescent boys to his apartment on campus, expose them to pornography, groom the boys, and then gratify himself through sexual relations with the minors.

7. Creed's predatory sexual conduct was known to and discussed among McDonogh board members, administrators, and faculty. McDonogh board members, administrators, and faculty also knew or should have known of Creed's predatory sexual conduct in the years plaintiff was a student at the school and boarding there.

8. Creed held a position of authority at McDonogh, which he used to exploit and abuse plaintiff. By force and over plaintiff's clearly stated express objections, Creed victimized plaintiff, a young student, to extract Creed's version of pleasure or satisfaction. On multiple occasions over the years, Creed sexually assaulted plaintiff and violated his bodily integrity.[1] Creed's abusive actions and personality-destroying predatory sexual assaults, attempted assaults, and other inappropriate behavior occurred on the McDonogh campus.

9. Creed's sexual assaults violated plaintiff's personhood, the integrity of his body, and his sense and ability to exercise control and agency over his life and body.

10. Creed sexually abused plaintiff. This McDonogh faculty member did this because, without regard for the age or rights of his victim, he could. Plaintiff did not consent to Creed's sexual assaults.

---

[1] Maryland's recent Child's Victim Act (effective October 1, 2023) abolishes the statute of limitations for the claim stated in this complaint. The constitutionality of that Act is being challenged. Maryland trial courts are split on the issue and this Court has certified the question to the Supreme Court of Maryland.

11. McDonogh knew of the harm Creed could cause because the school knew of his conduct prior to plaintiff's enrollment. Despite this knowledge, McDonogh's board, administration, and faculty took no action to remove or restrain Creed. McDonogh failed to remove Creed and allowed his predatory behavior to continue.

12. The first instance of abuse against plaintiff occurred in Creed's on-campus apartment when Creed showed plaintiff pornographic magazines; this quickly evolved into Creed's touching plaintiff and sexually assaulting him. This abuse continued on many subsequent occasions.

13. Creed also orchestrated a campaign to unfairly and inaccurately target plaintiff and accuse him of wrongdoing.

<u>Plaintiff's harms and injuries</u>

14. Plaintiff suffered immediate harm and injury as a result of Creed's attacks and McDonogh's inaction and complicity. These injuries are ongoing and life-altering. The direct and proximate cause of these injuries are the actions of Creed and the actions, inactions, and negligence of McDonogh. McDonogh knew that this member of its faculty had been engaging in wrongful student-destroying sexual misconduct by the time plaintiff became his victim.

15. Plaintiff suffered severe and extreme emotional distress during his middle and high school years, and that emotional distress has continued for decades.

16. Long after plaintiff left the school, McDonogh acknowledged Creed's history of sexually abusing students and the school's failure to act on information it had at the time of Creed's conduct, including when plaintiff was a student.

4

<u>Creed's indictment and McDonogh's highly belated disclosures</u>

17.     Decades after plaintiff left the school, on November 7, 2016, McDonogh informed alumni and others that Creed, the school's long-time faculty member who had repeatedly sexually attacked and abused plaintiff, had pleaded guilty to a fourth-degree sexual assault offense and abuse of a minor student at McDonogh in the mid-1980s. McDonogh has not explained its truly extraordinary and plainly calculated delay in reporting the "news" of Creed's conviction to potentially affected parties.

18.     McDonogh's 2016 letter stated that McDonogh, for its part, intended to conduct an outside investigation of matters related to Creed. Almost three years later, this investigation was completed. The investigation included confirmation of what had been long known in and around the school, including by board members, administrators, and faculty, regarding Creed's sexually abusive actions. The investigation determined that "Creed [and another faculty member] engaged in sexual misconduct with 19 male students …"

19.     As the investigative report makes clear, Creed's sexual misconduct was known to responsible McDonogh officials and McDonogh took no action: "some of these allegations were reported to the School at the time, and it is now clear from the completed investigation that then-active School Administration officials and members of the Board of Trustees failed to take appropriate action when these allegations were first reported more than three decades ago."

20.     McDonogh acted with reckless, if not deliberate, indifference toward plaintiff and failed to act to protect plaintiff from harm, notwithstanding its knowledge of the risk that Creed's presence on campus presented to plaintiff (and others). This failure to act was a breach of the school's duties and obligations to plaintiff. With calculation and deliberate intent, McDonogh

5

strategically delayed for decades the disclosure of Creed's conviction and then delayed for three years the completion/release of its investigative report.[2]

## Claim for Relief – Negligence

21. Plaintiff here adopts and incorporates by reference every fact and allegation contained in ¶¶ 1-20.

22. Plaintiff was a student at McDonogh. Plaintiff boarded at the school for summer school in seventh grade, and for eighth, ninth, and part of tenth grades. McDonogh owed plaintiff a duty of reasonable care and protection during those years. McDonogh breached its duty of care and protection and, as a direct result of that breach, plaintiff suffered and continues to suffer great harm and damage, as detailed above.

23. McDonogh breached its duty of care to plaintiff by: negligently hiring Creed, including failing to properly and adequately vet him and his history prior to his hiring; negligently failing to oversee, monitor, supervise and discipline Creed after his hiring; failing to investigate credible and repeated statements, allegations and reports of suspected incidents of Creed's abusive improper sexual conduct with McDonogh students; failing to investigate allegations and reports that Creed was sexually abusing the school's students; failing to act upon reports and information that the school, including its board members, administrators, and faculty, had about Creed's history of sexual abuse of and improper "relationships" with McDonogh students; failing to limit or prevent Creed's access to plaintiff; failing to have necessary monitors on campus to prevent Creed from being alone with plaintiff; failing to take disciplinary or corrective action with respect to

---

[2] McDonogh's explanations for these delays will be a subject for future discovery. Plaintiff strongly suspects that the delays were intentional and strategically calculated to create, if possible, statute of limitations problems for plaintiff (and other similarly wronged McDonogh students).

Creed despite the school's knowledge of his actions and misconduct; failing to report what the school knew or had good reason to strongly suspect about Creed's sexually abusive actions to appropriate law enforcement authorities, thereby allowing Creed's misconduct to continue and at plaintiff's expense; by allowing Creed to be a continuous threat to plaintiff's bodily integrity, health and safety; by failing to warn plaintiff and his parents of Creed's sexual proclivities; and by failing, upon notice of Creed's conduct, to remove Creed of any and all positions and responsibilities at McDonogh and barring him from the campus forever.

24. McDonogh's actions and inactions breached the school's duty of care to plaintiff. McDonogh was required to act with the degree of reasonable care due as a private school that provided boarding and where plaintiff (and others) boarded. Here, McDonogh acted with reckless, if not deliberate, indifference. McDonogh's multiple breaches of its duty created the foreseeable risk that plaintiff would suffer harm and damage. Plaintiff was a foreseeable Creed victim and McDonogh failed to take reasonable actions under the circumstances to prevent Creed's access to plaintiff. The direct and proximate consequence and result of McDonogh's breaches of duty and failures to act was that plaintiff became Creed's victim. Creed's sexual abuse of plaintiff and all the resulting harms and injuries to plaintiff were the foreseeable, if not inevitable, proximate result and consequence of McDonogh's numerous failures and breaches of its legal duties.

25. As a direct and proximate result of McDonogh's negligence and breaches of duty of reasonable care and treatment of plaintiff, plaintiff sustained and suffered physical, emotional, and psychological injuries, severe emotional pain, suffering and distress, depression, substance abuse, and an overall loss of enjoyment of life. Plaintiff's injuries began in his student years and have been and are ongoing and continuous to date. Plaintiff has sought care and treatment, with

7

only limited success, and may continue to do so. His injuries are serious, ongoing, and will continue for the balance of his life.

### Prayers for Relief

WHEREFORE, based upon the facts to be proven at trial, plaintiff seeks substantial monetary relief, in an amount to be determined by the jury, plus available fees, interest and costs, and such other further and additional relief as the Court determines is just and proper.

### Demand for Jury Trial

Plaintiff hereby respectfully demands a trial by jury.

Respectfully submitted,

*/s/ Ari S. Casper*
Ari S. Casper (Bar # 14512)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
Attorney for Plaintiff